IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ARIEL M. S.,**

    **Plaintiff,**

v.                                                                         Civ. No. 2:24-cv-00388 KRS

**FRANK BISIGNANO,[1] Commissioner**
of the Social Security Administration,

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon *pro se* Plaintiff Ariel M. S.'s ("Plaintiff") Motion for Reverse ("Motion") (Doc. 20), dated November 4, 2024, challenging the determination of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") that Plaintiff is not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") did not err in his decision and will therefore **DENY** Plaintiff's Motion and **AFFIRM** the judgment of the Commissioner.

**I.     PROCEDURAL POSTURE**

On January 2, 2020, Plaintiff filed an initial application for SSI with an alleged onset date

---

[1] Frank Bisignano became the Acting Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of July 1, 2018.[3] (*See* Administrative Record ("AR") at 270). Plaintiff alleged she was disabled due to hearing loss and "border line personality," *i.e.*, mental impairments. (*Id.* at 270, 291). Plaintiff's application was denied at the initial level on July 8, 2020, (*id.* at 27, 126, 155), and upon reconsideration on November 30, 2021, (*id.* at 27, 169). Plaintiff requested a hearing on December 28, 2021, (*id.* at 27, 172-73), which ALJ Brian Battles ("ALJ Battles" or the "ALJ") conducted telephonically on December 15, 2022, (*id.* at 27, 63-112). Plaintiff was represented by an attorney and testified at the hearing, (*id.* at 27, 73-101), as did vocational expert Suman Srinivasan ("VE"), (*id.* at 27, 101-09).

On January 12, 2023, ALJ Battles issued an unfavorable decision. (*Id.* at 24-44). Plaintiff sought review from the Appeals Council, (*id.* at 264-67), which denied review on June 8, 2023, (*id.* at 8-16), thus making the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On April 23, 2024, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision. (Doc. 1); (*see also* AR at 1-2). On November 4, 2024, Plaintiff filed the instant Motion. (*See* Doc. 20). The Commissioner responded to Plaintiff's Motion on January 29, 2025, (Doc. 26), and Plaintiff filed a reply on March 11, 2025, (Doc. 27).[4]

## II.  LEGAL STANDARDS

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether

---

[2] Document 14 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page. Notably, multiple documents in the AR state Plaintiff's filing date as January 2, 2020, or January 27, 2020. (*Cf.* AR at 27, 113 with 270). The Court utilizes January 2, 2020, as the respective date for purposes of this Memorandum, Opinion, and Order.
[3] At the December 15, 2022, hearing, Plaintiff amended her alleged onset date to January 2, 2020. (AR at 27, 70).
[4] Plaintiff did not file a Notice of Completion per D.N.M.LR-Civ.7.4(e). The Court, *sua sponte*, finds the Motion is ripe as the last filing in relation to the Motion was March 11, 2025, and Plaintiff has not requested leave of the Court to file a surreply.

substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron*

*v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

    **B.**        **Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the Commissioner will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24; 20 C.F.R. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i-iv) (citing *id.* § 404.1509); *Grogan*, 399 F.3d at 1261.

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must

obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

The claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

On January 12, 2023, ALJ Battles issued a decision denying Plaintiff's application for SSI. (AR at 24-44). In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. (AR at 27-38). First, ALJ Battles found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 2, 2020. (*Id.* at 29 citing 280, 284). The ALJ then found at step two that Plaintiff suffered from the following severe impairments: "post-traumatic stress disorder, alcohol use disorder, adjustment disorder with mixed anxiety and depressed mod, other specified personality disorder, attention deficit hyperactivity disorder, and bilateral hearing loss." (*Id.* at 29). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 29-31). ALJ Battles also determined Plaintiff did not meet or medically equal Listing 2.10 (hearing loss not treated with cochlear implantation) because Plaintiff's

objective medical tests did not meet the requisite thresholds. (*Id.* at 30). Nor did Plaintiff's mental impairments, singly and in combination, "meet or medically equal the criteria of Listings 12.04, 12.06, 12.08, and 12.15." (*Id.*)

The ALJ next determined that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 416.967(c), except Plaintiff could work in a "moderate noise environment." (*Id.* at 31). ALJ Battles also clarified that Plaintiff could "understand, remember, and carry out simple instructions in the workplace . . . perform repetitive work, but not work requiring a specific production rate such as assembly line work . . . work in a low stress job, defined as making only occasional decisions and tolerating only occasional changes in the work setting." (*Id.*) Further, Plaintiff could "have no more than occasional interaction with supervisors, coworkers, and the general public with respect to performing work related duties." (*Id.*)

In determining Plaintiff's RFC, the ALJ extensively reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*Id.* at 32-37).

Plaintiff stated she was primarily unable to work due to her "emotional and mental health." (AR at 80). Plaintiff elaborated at the disability hearing that she suffered from daily panic attacks and emotional outbursts stemming from PTSD. (*Id.* at 83). She further claimed that "memories of . . . having problems with communicating and being made fun of" caused her emotional outbursts, rage, and panic attacks. (*Id.* at 83-84). She also testified that her hearing loss affected her ability to talk, understand, remember, complete tasks, concentrate, understand and follow instructions, and get along with coworkers and supervisors. (*Id.* at 32 (citing generally AR at 73-101, 290-96, 304-12, 323-30)).

In assessing the evidence of record, the ALJ concluded that Plaintiff's medically

determinable impairments could reasonably be expected to cause her alleged symptoms. (*Id.* at 32). He held, however, that Plaintiff's statements about the "intensity, persistence, and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

ALJ Battles detailed Plaintiff's medical history from approximately October 3, 2003, to September 26, 2022. (AR at 27-38). As noted above, the medical record shows Plaintiff reported hearing loss and psychological symptoms from her mental impairments. Indeed, ALJ Battles noted Plaintiff's extensive complaints that included "depression, difficulty sleeping, difficulty concentrating, anxiety, paranoia, and compulsive thoughts." (*Id.* at 33 (citing AR at 523-33, 542)). The ALJ further addressed Plaintiff's medical examinations wherein she showed "rapid and pressured speech; racing flight of ideas; an anxious mood; rambling speech; tearful behavior; a disheveled appearance; an unstable affect; poor attention span and concentration; and a depressed mood." (*Id.* (citing AR at 523-41, 543, 549, 565, 577)). Plaintiff also had difficulty with organizing her thoughts and staying on task at her June 2020, consultative examination. (*Id.* at 34 (citing AR at 534-41). Plaintiff also underwent a stapedectomy on the right ear in 2003, but continued to complain of bilateral hearing loss with the loss worse in the left ear. (*Id.* at 33 (citing AR at 439-42)).

Despite these reports, however, Plaintiff's examinations generally painted a different picture. Specifically, ALJ Battles made the following findings:

- Plaintiff's December 2018, MRI showed "a partial ossicular prosthesis in the right middle ear cavity" and her audiologic examinations performed prior to and during the period at issue were not outside the requisite thresholds set by Listing 2.10. (*Id.* at 33 (citing AR at 440, 471, 503, 560-61));

- Plaintiff's physical examinations demonstrated ear canals without lesions, intact tympanic membrane with no evidence of retraction or effusion, and Plaintiff's voice quality was within normal limits and she was able to speak in full sentences during examinations. (*Id.* (citing AR at 440, 469, 543, 553, 565, 573));

- In 2019, Plaintiff underwent left sided stapedectomy with placement of a stapes prosthesis, which she stated improved her hearing. (*Id.* (citing AR at 469-70, 483));

- Plaintiff was also able to attend and participate in telephonic appointments in May 2020, and March 2022, without issues from her bilateral hearing loss. (*Id.* (citing AR at 523-33, 567));

- At her examinations, Plaintiff generally was alert; oriented to person; place and time; cooperative; exhibited an appropriate mood and affect; had normal perception, thought content, cognition, insight, judgment, concentration as well as attention span; and intact memory with no agitation. (*Id.* at 34 (citing AR at 440, 466, 523-41, 543, 577)); and

- During the period at issue, Plaintiff was treated conservatively with medication—she was not receiving mental health treatment in May 2020, and not taking any psychiatric medication in June 2020. (*Id.* (citing AR at 523-41, 544)).

Likewise, the ALJ found the longitudinal records and testimony was not entirely consistent with Plaintiff's subjective allegations. (*Id.* at 30-36). At the December 15, 2022, disability hearing, Plaintiff testified she experiences panic attacks, does not go out in public often, wants to stay inside her home, and has trouble communicating with her family. (*Id.* at 30 (citing generally AR at 63-112; *see also* AR at 74, 80-83, 90, 95-96)). Notwithstanding, she testified she would shop in stores and drive to the grocery store and drive her daughter to school. (*Id.* at 30 (citing generally AR at 63-112; *see also* AR at 75)). Plaintiff further testified that she could concentrate when watching a

television show or reading a book if she was "interested in" the television show or book. (AR at 85-86). Moreover, she reported she regularly spent time with people in person, on the phone, and she managed well with authority figures. (*Id.* at 30 (citing AR at 63-112, 304-312, 323-30, 466, 527, 534-41, 543-44, 549-50, 565, 569, 577)).

The ALJ also concluded that Plaintiff's Adult Function Reports contradicted her subjective claims. For instance, in her April 6, 2020, Adult Function Report, Plaintiff reported she could: (1) complete daily tasks such as cleaning her home—"doing dishes, taking trash, etc.," laundry, vacuum, dusting, cooking daily, visit with family, and check email, (AR at 30, 32 (citing *generally* AR at 304-12)); (2) take care of her daughter by helping with homework and cooking for her, (*id.*); and (3) feed her dog and take the dog to the "yard for walks frequently," (*id.*). Then, in the March 25, 2021, Adult Function Report, Plaintiff stated she: (1) had "no problem" with personal care, (AR at 30, 32 (citing *generally* AR at 323-30)); (2) liked to cook recipes, travel, "do all laundry, dishes, mowing, anything that needs to be done," and care for her daughter and dog, (*id.*); and (3) could drive and shop in stores for groceries, household items, clothes, car parts, and materials for the home, (*id.*). Accordingly, ALJ Battles determined Plaintiff could work within the modified limitations in the RFC.

Based on the foregoing, ALJ Battles concluded Plaintiff had a moderate limitation: (1) as to "understanding, remembering or applying information," (AR at 30); (2) pertaining to interacting with others, (*id.*); (3) regarding "concentrating, persisting or maintaining pace," (*id.* at 31); and (4) for "adapting or managing oneself," (*id.*).

Next, ALJ Battles evaluated three medical source statements for their persuasiveness. He found unpersuasive the opinion of a State agency consultant, at the initial level, who opined Plaintiff did not have a severe physical medically determinable impairment. (*Id.* at 34-35). The

ALJ found that the State agency consultant's opinion was not consistent with the longitudinal record that showed "severe physical medically determinable impairment" that limited Plaintiff "to work at the medium exertional level with environmental limitations." (*Id.* at 35 (citing AR at 63-112, 304-12, 323-30, 439-40, 442, 469, 471-72, 483, 523-33, 543, 553, 565, 567, 577)). In support of his finding, the ALJ noted Plaintiff's diagnostic imaging, audiologic and physical examinations, as well as Plaintiff's self-reports of improved hearing after her surgery and ability to "communicate normal during examinations" and participate in telephonic appointments. (*Id.* (citing AR at 63-112, 304-12, 323-30, 439-40, 442, 469, 471-72, 483, 523-33, 543, 553, 565, 567, 577)). ALJ Battles also found "significantly persuasive" the opinion a State agency consultant, at the reconsideration level, that Plaintiff was limited in hearing bilaterally. (*Id.* (citing AR at 63-112, 304-12, 323-30, 439-40, 442, 469, 471-72, 483, 523-33, 543, 553, 565, 567, 577)). He determined that the opinion was "supported with refence" to Plaintiff's physical and audiologic examinations, activities of daily living, and subjective complaints. (*Id.*). Further, the longitudinal record was consistent with an environmental limitation at a medium exertional level in light of Plaintiff's hearing loss. (*Id.*) He also found the State agency consultants' opinions, at the initial and reconsideration levels, that Plaintiff "had moderate b-criteria limitations" persuasive. (*Id.*) He noted the opinions were consistent with the longitudinal record, which included Plaintiff's mental status examination results, activities of daily living, and performance during examinations. (*Id.*) Although Plaintiff exhibited and reported "rapid and pressured speech, racing flight of ideas, an anxious mood, rambling speech, tearful behavior," and poor concentration and attention span during her examinations she also was cooperative, had appropriate mood and affect, as well as normal perception, thought content, cognition, judgment, concentration and attention span. (*Id.*) That behavior in combination with her activities of daily living and conservative treatment

supported the moderate b-criteria limitations. (*Id.* at 35-36 (citing AR at 63-112, 304-12, 323-30, 440, 466, 523-41, 543-44, 549, 565, 577)).

In evaluating consultative examiner, John Owen, PhD ("Dr. Owen"), ALJ Battles held Dr. Owen's June 2020, opinion was "somewhat persuasive." (*Id.* at 36). Dr. Owen opined Plaintiff had "moderate difficulty" in "understanding and remembering detailed or complex tasks," "attend and concentrate," and "adapt to changes in the workplace." (*Id.* (citing 534-41)). Dr. Owens also opined Plaintiff had a "moderate to marked difficulty" to "persist at tasks," "interact with the public and coworkers," and "use public transportation." (*Id.*) He further opined Plaintiff had a "mild difficulty" to carry out instructions. (*Id.*) Plaintiff, however, had "no difficulty" in her "ability to work without supervision" and "understanding or remembering very short and simple instructions." (*Id.*) While the opinion was "generally supported" by Plaintiff's performance at Dr. Owen's consultative examination and his correlating notes, the degree of limitation he opined was not consistent with the longitudinal record. (*Id.* at 36). For instance, Plaintiff's conservative treatments, activities of daily living, as well as her "normal and abnormal mental status examination findings" challenged Dr. Owen's opinion. (*Id.* (citing AR at 63-112, 304-12, 323-30, 440, 466, 523-41, 543-44, 549, 565, 577)).

ALJ Battles further evaluated the March 26, 2021, "Third-Party Function Report," filed by Michael Smith, Plaintiff's father. (*Id.* at 36 (citing AR at 333-42)). He found the report to be consistent with Plaintiff's subjective claims, but found the degree of limitation was not fully consistent with the objective medical evidence and longitudinal record. (*Id.* (citing AR at 63-112, 304-12, 323-30, 439-40, 442, 466, 469, 471-72, 483, 523-41, 543-44, 549, 553, 560-61, 565, 567, 577)).

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a

certified nursing assistant. (*Id.* at 37). Nevertheless, taking into consideration Plaintiff's age (33), education (at least high school), prior work experience, and RFC, Plaintiff could work as a hospital cleaner, floor waxer, or dining room attendant. (*Id.* at 38). ALJ Battles thus concluded Plaintiff was not disabled at any time from January 2, 2020, through the date of the decision. (*Id.*)

## IV.    DISCUSSION[5]

Plaintiff asserts ALJ Battles committed both legal and factual errors at step three when he found her bilateral hearing loss did not meet or medically equal Listing 2.10. (Doc. 20 at 2-3). Plaintiff further contends that the ALJ made inaccurate statements regarding her mental health treatment. (*Id.* at 3). Defendant disputes each of these arguments. *See generally* doc. 26. For the reasons explained below, the Court agrees with Defendant.

Because Plaintiff is appearing *pro se*, the Court will "liberally construe her filings." *Streeter v. Berryhill*, 724 F. App'x 632, 634 (10th Cir. 2018) (unpublished) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) and *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). As a result, the Court may "make some allowances for a *pro se* litigant's failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements." *Velasquez v. Astrue*, 301 F. App'x 778, 780 (10th Cir. 2008) (unpublished) (citation omitted). The Court does not, however, "serve as an advocate or attorney for a *pro se* litigant by 'constructing arguments and searching the record' on her behalf." *Streeter*, 724 F. App'x at 634 (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

### A.    The ALJ Did Not Err at Step Three as to Plaintiff's Bilateral Hearing Loss

---

[5] Because Plaintiff applied for disability benefits after March 27, 2017, the ALJ was required to evaluate the medical opinions under the revised regulation found in 20 C.F.R. § 404.1520c. Plaintiff does not object to ALJ Battles' conclusions as to the persuasiveness of the three medical opinions. Accordingly, Plaintiff waives any objections as to whether the ALJ applied the correct legal standards in determining the persuasiveness of the medical opinions. *See Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996) (recognizing "that waiver principles developed in other litigation contexts are equally applicable to social security cases").

Plaintiff contends ALJ Battles erred in finding she did not meet the criteria of Listing 2.10 because (1) she has a cochlea implant device and thus, Listing 2.11 should have been considered; and (2) the diagnostic imaging, audiologic and physical examinations demonstrated she had an average air conduction hearing threshold of 90 decibels in her better ear (left ear). (Doc. 20 at 2-3).[6]

The Court finds ALJ Battles' findings are substantially supported and consistent with the record. First, the ALJ concluded Listing 2.10 (Hearing loss not treated with cochlear implantation) was appropriate based on Plaintiff's objective medical records. In 2003, Plaintiff underwent a stapedectomy on her right ear. (AR at 33 (citing AR at 439, 442)). The purpose of the stapedectomy was to treat Plaintiff's hearing loss caused by otosclerosis by implanting a "Robinson bucket-handle prosthesis." (*Id.* (citing AR at 439, 442-43)). The ALJ found Plaintiff's December 10, 2018, radiology MRI report confirmed she had "a partial ossicular prosthesis in the right middle ear cavity." (*Id.* at 33 (citing AR at 503)). ALJ Battles' finding is thus substantially supported by the medical records. Plaintiff's reliance on a singular January 2011, radiology consultation report that states, "[t]here is a metallic device noted about the right middle ear extending through the right oval window in the cochlea," is not sufficient to dissuade the Court. (AR at 414); (Doc. 20) at 3. The report does not state Plaintiff has a cochlea implant. (*See* AR at 414). It merely provides that there is a device in the middle ear that extends to the cochlea. The Court thus finds the ALJ did not err at step three in applying Listing 2.10.

---

[6] Plaintiff's Motion includes exhibits that are not identified as part of the Administrative Record. As such, the Court is tasked with scouring the Administrative Record, which it will not do. When a party proceeds *pro se*, the court generally construes her pleadings liberally, holding them to a less stringent standard than those filed by a party represented by counsel. *Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court will not fashion Petitioner's "arguments for him where his allegations are merely conclusory in nature without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). The court is also not obligated to comb the record in order to craft Plaintiff's arguments. *See Mulford v. Altria Grp., Inc.*, No. CV 05-659 MV/RHS, 2009 WL 10701953, at *1 (D.N.M. March 30, 2009) (Vazquez, J.).

The Court also concludes there is substantial evidence to support ALJ Battles' finding that Plaintiff did not satisfy the criteria in Listing 2.10(A). To meet Listing 2.10(A), Plaintiff must present evidence showing "[a]n *average* air conduction hearing threshold of 90 decibels or greater in the better ear *and* an *average* bone conduction hearing threshold of 60 decibels or greater in the better ear . . . ." 20 C.F.R. pt. 404, subpt. P, app. 1, § 2.10 (emphasis added).[7] To determine whether Plaintiff meets Listing 2.10(A), the air conduction and bone conduction hearing thresholds are ***averaged at 500, 1000, and 2000 Hertz*** (Hz). 20 C.F.R. pt. 404, subpt. P, app. 1, § 2.00(B)(2)(c) (emphasis added). Plaintiff contends the longitudinal medical record supports a finding that her average air conduction hearing threshold was 90 decibels or higher in her right ear. (Doc. 20 at 3). The Court disagrees.

ALJ Battles reviewed audiologic examinations during the relevant time period. (AR at 33). The audiogram results show Plaintiff's air conduction threshold at 500, 1000, and 2000 Hz was less than 90 decibels in her right ear. (*Id.* (citing 560-61)); (*see also* AR at 30 (citing medical records)); (AR at 35 (citing AR at 129-53)); (AR at 580, 584, 598). They further demonstrate that her bone conduction hearing threshold at 500, 1000, and 2000 Hz was less than 60 decibels in her right. (*Id.* at 33 (citing 560-61)); (*see also* AR at 30 (citing medical records)); (AR at 35 (citing AR at 129-53)). Plaintiff is correct that there are some audiogram results from the relevant time period that show results equal to or slightly higher than 90 decibels. These results are at 6000 and/or 8000 Hz. (*See* AR at 560, 580, 584). The regulations require the hearing thresholds are averaged at 500, 1000, and 2000 Hz—not 6000 or 8000 Hz. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 2.00(B)(2)(c). Plaintiff's proffered results are hence inapplicable in assessing whether she

---

[7] Defendant also contends that Plaintiff could not satisfy Listing 2.10(B). A review of the Motion, however, demonstrates that Plaintiff did not argue that ALJ Battles should have applied List 2.10(B) in the Motion nor her reply. The Court thus finds Plaintiff has waived this argument and it need not address Defendant's contentions thereto. *See Berna*, 101 F.3d at 632-33.

meets Listing 2.10(A) criteria. Moreover, Plaintiff fails to proffer any arguments or evidence that her audiologic examinations met the second part of Listing 2.10(A)'s criteria. Specifically, whether Plaintiff's audiograms showed an "average *bone conduction* hearing threshold of 60 decibels or greater in the better ear . . . ." 20 C.F.R. pt. 404, subpt. P, app. 1, § 2.10 (emphasis added). The Court need not, and will not, scour the Administrative Record to formulate Plaintiff's legal and factual arguments. *See Mulford* 2009 WL 10701953, at *1. ALJ Battles thus appropriately concluded, based on the substantial medical records, that Plaintiff did not meet Listing 2.10(A).[8]

## B. The ALJ Did Not Commit Error in His Assessment of Plaintiff's Mental Health RFC

Turning to the second alleged deficiency, Plaintiff contends ALJ Battles' statement that she "was treated conservatively with medication, but [Plaintiff] was not receiving mental health treatment in May 2020 and was not taking psychiatric medication at the time her consultative evaluation in June 2020" is disputed by her La Casa Community Behavioral Health ("LCBH") medical records. (Doc. 20) at 3 (citing AR at 39). In support of her contention Plaintiff argues: (1) Exhibit 4F is inapplicable to her mental health; (2) Exhibit 8F demonstrates she was receiving mental health treatment "continuing throughout" the relevant time period; and (3) she had difficulty making medical health appointments during the relevant time period due to the COVID-19 pandemic. (Doc. 20) at 3.

The Court concludes Plaintiff's objection to Exhibit 4F is baseless. The ALJ did not cite

---

[8] Defendant argues the ALJ explicitly found Plaintiff's bilateral hearing loss did not medically equal Listing 2.10. (Doc. 26 at 7). The Court agrees that ALJ Battles' articulation of this finding was sufficient in light of standing policy and legal precedent. SSR 17-2p, 2017 WL 3928306, at *4 (a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding."); *see also Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." (internal citation and quotation marks omitted)). Further, the Court also finds that on appeal Plaintiff waived this argument as she failed to raise it in her moving brief. *See Berna*, 101 F.3d at 632-33.

Exhibit 4F in support of the statement at issue on appeal. (*See* AR at 34). The Court further finds Plaintiff's LCBH medical records, as cited by ALJ Battles, contain substantial evidence to support the ALJ's conclusion that Plaintiff was conservatively treated with medication and not receiving mental health treatment. Plaintiff first appeared for a telephonic "initial visit" at LCBH on May 29, 2020. (*Id.* at 523, 527). At that visit, Plaintiff stated she was "not receiving therapy nor taking medications." (*Id.* at 527). Plaintiff's therapist eventually recommended she attend biweekly therapy sessions. (*Id.* at 529). Plaintiff, however, was discharged as a therapy patient on January 25, 2021, because she "missed every appointment since" her May 2020, initial visit. (*Id.* at 546). Consequently, Plaintiff was changed to a "medication management only" patient in January 2021. (*Id.*) Plaintiff's LCBH records further establish that her medication treatment was conservative. Plaintiff was initially prescribed medication for attention deficit hyperactivity disorder and depression. (*Id.* at 552-53). Plaintiff, however, discontinued the depression medication without first consulting LCBH. (*Id.* at 554). It was not until January 21, 2021, that Plaintiff began taking a low dose anxiety medication that she was eventually instructed to take "as needed." (*Id.* at 548, 565). Plaintiff also failed to refill her medication due to missing doctor appointments. (*Id.* at 575). Moreover, at her June 10, 2020, consultative examination, Plaintiff told Dr. Owens that she "does not take any medications." (*Id.* at 537). Based on the foregoing, the medical record is replete with substantial evidence to support ALJ Battles' determination that Plaintiff treated her mental health symptoms conservatively with medication only, was not receiving therapy nor taking psychiatric medication in May 2020, and was not taking psychiatric medication in June 2020. The Court thereby finds ALJ Battles did not err in making his conclusion and, ultimately, his mental RFC findings.

To that end, the Court further finds ALJ Battles' mental RFC findings are supported by

substantial evidence in the longitudinal record. The ALJ did not ignore evidence of oscillating severity in Plaintiff's symptoms. As noted earlier, he acknowledged Plaintiff had abnormal mental findings and symptoms—throughout her medical history. (*See generally* AR at 33 (citing AR at 523-43, 549, 565, 577)). However, the ALJ cited extensive records that showed normal mental health examinations, noncompliance with therapy, limited medication management, and activities of daily living. (*Id.* at 30 (citing AR at 532, 543, 549, 565, 577); *id.* at 34 (citing AR at 440, 466, 523-41, 543-44, 577)). This thorough analysis discharged ALJ Battles' obligation to account for any swings in the severity of Plaintiff's impairments. *See K.S. v. Saul*, Case No. 20-1253-JWB, 2021 U.S. Dist. LEXIS 106959, 2021 WL 2338250, at *5 (D. Kan. June 8, 2021); *see also* 20 C.F.R. § 404.1545(a)(3) (requiring the ALJ to base the RFC "on all of the relevant medical and other evidence").

But, here, ALJ Battles did consider Plaintiff's mental health symptoms in assessing her RFC. Specifically, he limited Plaintiff to work that did not require a specific production rate and was low stress, *i.e.*, "making only occasional decisions and tolerating only occasional changes in the work setting." (AR at 31). He also reduced Plaintiff's interaction with coworkers, supervisors, and the general public to "occasional." (*Id.*) Thus, the record suggests that the ALJ took the reported mental health symptoms into account in assessing Plaintiff's mental RFC. Plaintiff fails to identify any additional function limitations that were warranted by the record. Nor does she demonstrate that the ALJ failed to properly consider the records related to the effects of her mental health during the relevant period. Construing Plaintiff's Motion liberally, she asks the Court to reweigh the evidence. (Doc. 20) at 3. That is something this Court cannot do. *See Langley*, 373 F.3d at 1118. The ALJ applied the correct legal standard here and made a decision that was supported by substantial evidence in the record. The mere fact that there is evidence which might

support a contrary conclusion is not sufficient to show error on the part of ALJ Battles. *Scrivner v. Berryhill*, 323 F.R.D. 663, 665–66 (D.N.M. January 11, 2018); *Lax*, 489 F.3d at 1084 ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' "but we will not reweigh the evidence or substitute our judgment for the Commissioner's.") The Court will therefore deny Plaintiff's motion on this final ground.

V.  **CONCLUSION**

Plaintiff has failed to convince this Court that the Commissioner's final decision to deny her Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, was tainted by legal error or unsupported by substantial evidence. Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reverse (Doc. 20), is **DENIED** and the decision of the Commissioner is **AFFIRMED**. A final judgment under Rule 58 will be entered concurrently with this Memorandum Opinion and Order.

IT IS SO ORDERED.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**